767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, RESPONDENT,
v.
JOHN DEMJANJUK, PETITIONER.
 NO. 85-3198
 United States Court of Appeals, Sixth Circuit.
 6/28/85
 
 I.N.S.
 AFFIRMED
 ON APPEAL FROM THE IMMIGRATION AND NATURALIZATION SERVICE
 BEFORE: KENNEDY and MILBURN, Circuit Judges; and BERTELSMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner John Demjanjuk's certificate of naturalization was revoked by the United States District Court for the Northern District of Ohio on June 23, 1981. United States v. Demjanjuk, 518 F. Supp. 1362 (N.D. Ohio 1981), aff'd, 680 F.2d 32 (6th Cir. 1982), cert. denied, 459 U.S. 1036 (1982). Demjanjuk's subsequent motions to have the district court's judgment set aside under Rule 60(b) were denied by the district court, and the district court's judgments were affirmed by this court. United States v. Demjanjuk, 103 F.R.D. 1 (N.D. Ohio 1983), and No. C77-923 (N.D. Ohio Feb. 12, 1985), aff'd after consolidation, No. 84-3106 and No. 85-3212, (6th Cir. 1985) (filed simultaneously with the instant opinion).
 
 
 2
 On December 6, 1982, deportation proceedings were commenced, and on May 23, 1984, the Immigration Court ordered Demjanjuk deported. Demjanjuk's deportability was subsequently affirmed by the Board of Immigration Appeals ('BIA'). Demjanjuk now seeks review of the order of deportation and argues (1) that the BIA improperly applied the doctrine of collateral estoppel to the findings of the district court's denaturalization proceeding, and (2) the record does not contain reasonable, substantial, and probative evidence which, when considered as a whole, would support a finding of deportability. For the reasons that follow, we affirm.
 
 COLLATERAL ESTOPPEL
 
 3
 The deportation proceedings now being reviewed were brought against Demjanjuk pursuant to Secs. 241(a)(1), (2) and (19) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(1), (2) and (19). These sections provide:
 
 
 4
 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who--
 
 
 5
 (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;
 
 
 6
 (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States;
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 (19) during the period beginning on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with--
 
 
 10
 (A) the Nazi government of Germany,
 
 
 11
 (B) any government in any area occupied by the military forces of the Nazi government of Germany,
 
 
 12
 (C) any government established with the assistance of cooperation of the Nazi government of Germany, or
 
 
 13
 (D) any government which was an ally of the Nazi government of Germany,
 
 
 14
 ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion.
 
 
 15
 With regard to section 241(a)(1), the government charged that Demjanjuk was excludable under sections 2, 10, and 13 of the Displaced Persons Act ('DPA') and sections 13 and 25 of the Immigration Act of 1924. As to section 241(a)(2), the government charged that Demjanjuk entered the United States in violation of sections 2, 10, and 13 of the DPA and sections 13 and 25 of the Immigration Act of 1924. Finally, the government charged that pursuant to section 241(a)(19) Demjanjuk was deportable because he ordered, incited, assisted, or otherwise participated in the persecution of persons because of race, religion, national origin, or political opinion, under the direction of, or in association with, the Nazi government of Germany.
 
 
 16
 'Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.' Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979). The first issue which the government claims was actually and necessarily determined in the denaturalization proceeding--and therefore conclusive in this deportation proceeding--was Demjanjuk's alienage. The alienage issue is required in the deportation proceedings because section 241(a) is applicable only to 'any alien.'
 
 
 17
 The government alleged in its order to show cause that Demjanjuk was 'not a citizen or national of the United States.' In concluding its opinion on the denaturalization hearing, the district court held:
 
 
 18
 [t]he November 14, 1958 order of the United States Court for the Northern District of Ohio, admitting the defendant, John Demjanjuk, to citizenship of the United States of America, is hereby revoked and vacated and his Certificate of Naturalization, No. 7997497, is cancelled on the grounds that such order and Certificate were illegally procured and were procured by willful misrepresentation of material facts under 8 U.S.C. Sec. 1451(a).
 
 
 19
 United States v. Demjanjuk, 518 F. Supp. at 1386.
 
 
 20
 Similarly, the government alleged that Demjanjuk was 'a native of the Ukraine and a stateless person.' In the district court's finding of fact section it stated: 'The defendant, John Demjanjuk, was born on April 3, 1920, in the village of Dub Macharenzi, Ukraine, a republic of the U.S.S.R.' Id. at 1363.
 
 
 21
 The second issued found by the BIA to have been actually and necessarily determined in the denaturalization trial related to Demjanjuk's activities during World War II. For purposes of the instant case, these findings establish Demjanjuk's excludability under the DPA and, consequently, his deportability under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(1). Similarly, these findings establish Demjanjuk's entry in violation of the DPA and, therefore, his deportability under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(1), as well as his involvement with the German SS and deportability under section 241(a)(19) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(19).
 
 
 22
 Demjanjuk's relevant wartime activities can be divided into two major periods. First, in the denaturalization proceeding, the government asserted that Demjanjuk, as a Russian POW, was trained by the German SS at the Trawniki training camp for guard service at one of the death camps. On this issue the district court concluded 'that the defendant was present at Trawniki.' Demjanjuk, 518 F. Supp. at 1366. This conclusion was based largely on Government Exhibits 5 and 6, i. e., both sides of an identification card stating "Iwan Demjanjuk is employed as a guard in the Guard Units (Wachmannschaften) of the Reich Leader of the SS for the Establishment of SS and Police Headquarters in the New Eastern Territory. . . . HEADQUARTERS LUBLIN, TRAINING CAMP TRAWNIKI. . . ." Id. After reviewing the authenticating eivdence, the district court found 'that Government's Exhibits 5 and 6 are authentic and clearly show that defendant was at the German SS training camp of Trawniki.' Id. at 1368 (footnote omitted).
 
 
 23
 The second major period in Demjanjuk's wartime activities involved the actual service as a guard at the Nazi death camp of the Treblinka. The evidence before the court on this issue included the testimony of five (5) Jewish survivors and one (1) SS guard. Each of these witnesses identified Demjanjuk's visa photo from a photo spread. Furthermore, several of these witnesses testified to specific atrocities committed by Demjanjuk including Demjanjuk's placing prisoners in the gas chambers and operating the motors which sent the gas into the chambers. After reviewing the evidence, the district court concluded that defendant (Demjanjuk) was present at Treblinka in 1942-1943. Id. at 1376.
 
 
 24
 The third issue found by the BIA to have been resolved by the district court involved Demjanjuk's application for a visa under the DPA and his immigration into the United States. The district court found that Demjanjuk applied to the Displaced Persons Commission for consideration to immigrate to the United States. The district court then found that Demjanjuk 'made . . . misrepresentations, concealing his service with the German SS and the German military.' Id. at 1379.
 
 
 25
 Finally, the question of Demjanjuk's excludability under the DPA was specifically resolved by the district court and affirmed by this court. Demjanjuk, 518 F. Supp. at 1382, aff'd, 680 F.2d at 33. This conclusion was that Demjanjuk was not eligible for a visa under the DPA.
 
 
 26
 It is clear that the above issues were necessary to the district court's decision to revoke Demjanjuk's citizenship. The district court held that '[s]ince defendant was ineligible for a visa under the DPA, his citizenship must be revoked as 'illegally procured' because he failed to satisfy a statutory prerequisite of naturalization.' 518 F. Supp. at 1382 (footnote omitted). This holding was, of course, based on the district court's necessary findings with regard to Demjanjuk's wartime activities and willful misrepresentation of them. The district court's findings on these same issues render Demjanjuk deportable under 8 U.S.C. Sec. 1251.
 
 SUBSTANTIAL EVIDENCE
 
 27
 Demjanjuk also argues that the record does not contain reasonable, substantial and probative evidence which, when considered as a whole, would support a finding of deportability based on the high standard of proof in this case. Having carefully reviewed the record, we disagree. The record in this case clearly supported the conclusion based upon clear, convincing and unequivocal evidence that Demjanjuk served with the Nazi SS at Trawniki and Treblinka and, further, that he misrepresented his wartime activities during the immigration process.
 
 
 28
 Moreover, we note that Demjanjuk admitted that he misrepresented his wartime activities in order to obtain an immigration visa. As noted by the Immigration Court:
 
 
 29
 [Demjanjuk] conceded that he was a member of the Vlassov army while under the jurisdiction of the German army as a prisoner of war. [Demjanjuk] freely concedes that he had blood type markings [such as those given to members of the SS]. He conceded that he did not truthfully state his places of residence, the locations of places where he was interned by the German army, and the places and dates of his activities during the crucial years. . . . He further concedes that the information contained in his immigrant visa used for entry into the United States does not contain accurate or truthful information regarding these matters.
 
 
 30
 Immigration Court Opinion at 9-10 (App. 9-10). Thus, as the Immigration Court held, Demjanjuk is deportable, based solely on the concessions that he made.
 
 CONCLUSION
 
 31
 For the reasons stated herein, the judgment of the Board of Immigration is AFFIRMED.
 
 
 
 *
 The Honorable William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation